**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PROGRESSIVE SPECIALTY** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 06-0289-WS-C** |
| | ) | |
| **DORIS BAILEY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on defendant Doris Bailey's Motion to Dismiss or, in the Alternative, to Stay (doc. 6). The Motion has been briefed and is ripe for disposition at this time.[1] Additionally, defendant Brent Powell has filed a Joinder in the Motion to Dismiss (doc. 23) in which he adopts all arguments set forth in Bailey's Motion.

**I.     Background.**

This declaratory judgment action seeks federal resolution of certain insurance coverage issues arising from and pending in an ongoing state court lawsuit. On March 18, 2006, Doris Bailey ("Bailey") filed suit in the Circuit Court of Choctaw County, Alabama, against Marengo Forest Products, Inc. ("Marengo Forest"), Brent Powell ("Powell"), and certain other parties not relevant to this Order. Bailey alleges that, on or about September 18, 2005, Marengo Forest and Powell were negligent or wanton when a motor vehicle owned by Marengo Forest and operated by Powell struck Bailey while she was a pedestrian in the parking lot of a bar called the Hot Shots Club, causing her certain injuries.[2] The state court action remains pending in Choctaw

---

[1]      Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

[2]      The facts are far more colorful than this cold recitation in the Complaint might suggest. Indeed, it appears that at approximately 10:00 p.m. on the evening in question, Powell

County Circuit Court at this time, where it bears the caption *Doris Bailey v. Marengo Forest Products, Inc., et al.*, CV-06-32-JTB (the "*Bailey* Action").

On June 1, 2006, Powell filed an answer in the *Bailey* Action, by and through an attorney furnished by Marengo Forest's commercial auto insurer, Progressive Specialty Insurance Company ("Progressive"). Progressive was not originally named as a defendant in the *Bailey* Action. Just four days after answering, however, Powell filed another answer in the *Bailey* Action, this time via his own personal attorney.[3] Concurrently with his second answer, Powell filed a third-party complaint against Progressive in the *Bailey* Action. In that pleading, Powell asserted that Progressive was taking the position that it did not owe Powell coverage for Bailey's claim because his use of the truck exceeded the parameters of the permission granted him by Marengo Forest. By its terms, the third-party complaint seeks a declaratory judgment that Progressive's insurance policy affords coverage to Powell for the claims raised by Bailey and that Progressive has a duty to defend and to indemnify Powell in connection with the *Bailey* Action.[4]

On May 9, 2006, some six weeks after the *Bailey* Action commenced, but nearly a month before Powell filed his third-party complaint in state court, Progressive filed its Complaint for Declaratory Judgment in this District Court to commence this action. Named defendants include

---

and his wife climbed in the heavy-duty pick-up truck that Marengo Forest had provided him for use in the course of his employment, and proceeded to drive approximately 40 to 50 miles to the Hot Shots Club in Coffeeville, Alabama. Upon arrival, Powell apparently consumed eight to ten beers before participating in a bar brawl. During the ensuing fisticuffs, Powell brandished a hydraulic hose from the truck as a weapon by swinging it to and fro in the Hot Shots parking lot. Ultimately, Powell and his wife got back in the truck to extricate themselves from the fracas. As they drove away, it is alleged, the truck struck and injured Bailey.

[3]     Although the parties' filings do not reflect it, the Court assumes that the Progressive-provided counsel has withdrawn from representation of Powell in the *Bailey* Action, given Powell's election to proceed with retained counsel of his own choosing.

[4]     In late June 2006, Progressive filed a motion to dismiss the third-party complaint in the *Bailey* Action, on the grounds that this federal declaratory judgment action was already underway when the third-party complaint was filed and Alabama Code § 6-5-440 prohibits multiple lawsuits on the same subject matter. The Court's understanding is that this motion has not yet been ruled on by the Choctaw County Circuit Court.

Bailey and Powell, as well as four potential claimants (Arthur Dale, Mary Grayson, William Guy, Bennie Scarbrough) (the "Potential Claimants") who have been identified as possibly having claims against Powell for property damage arising from the events at Hot Shots.[5]  In a veritable mirror image of Powell's third-party complaint in the *Bailey* Action, Progressive seeks a declaration from this Court that its commercial auto policy for Marengo Forest did not afford coverage to Powell.  More precisely, Progressive contends that it owes neither indemnity nor a defense to Powell in the *Bailey* Action or in any suits that might be brought by the Potential Claimants, inasmuch as Powell was using the truck without Marengo Forest's permission and therefore was not an insured at the time of the Hot Shots incident.  Progressive further asserts that coverage is lacking because Powell's conduct does not constitute an "accident" under applicable policy provisions.

Defendant Doris Bailey now comes forward with a Motion to Dismiss or, in the Alternative, to Stay, in which she argues that this Court should decline to exercise jurisdiction over Progressive's declaratory judgment action because (a) Bailey and Powell are parties in both the state and federal actions; (b) "the same insurance coverage issues Progressive has raised in this action have now been raised in the state court action"; (c) the coverage issues raised by Progressive are governed exclusively by state law; (d) those issues can be more effectively and efficiently resolved in the ongoing state court proceedings; and (e) the exercise of federal jurisdiction here would waste judicial resources, multiply the litigation burdens on the parties, risk inconsistent rulings, and foster an appearance of disregard for the authority and expertise of the state court.  (Motion to Dismiss, ¶¶ 7-11.)  Progressive opposes this Motion.

## II.    Legal Standard.

Progressive's claims in this action were brought pursuant to 28 U.S.C. § 2201, seeking "a declaratory judgment establishing the parties' rights under a contract of insurance."  (Complaint, ¶ 3.)  But it is well-settled that the Declaratory Judgment Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of

---

[5]     None of the Potential Claimants are parties to the *Bailey* Action, nor have they otherwise initiated legal proceedings against Powell to date.  Nonetheless, the Court surmises that the Potential Claimants own other vehicles in the Hot Shots parking lot that were allegedly struck by the truck as Powell drove away.  (*See* Opposition Brief, at 1.)

litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citations omitted). As the Eleventh Circuit recently observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). "The desire of insurance companies ... to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3rd Cir. 2000); *see also Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 789 (8th Cir. 1998) ("The Supreme Court's decision in *Wilton* ... vests the district courts with broad discretion in deciding whether to hear a declaratory judgment action.").

Consistent with the foregoing, it has long been recognized in this Circuit that a district court has discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982).[6] Last year, the Eleventh Circuit reinforced *Ven-Fuel* and furnished district courts with considerable guidance in how to wield their discretion under the Declaratory Judgment Act where there are parallel state proceedings. In *Ameritas*, the court emphasized that federalism, comity, and efficiency require district courts to balance federal and state interests in determining how to exercise their discretion to hear a declaratory judgment action when confronted with a parallel state action. 411 F.3d at 1330-31.[7] To assist district courts in this endeavor, the *Ameritas* court

---

[6]     *Ven-Fuel* is in line with extant Supreme Court jurisprudence. More than 60 years ago, the Supreme Court opined that it would be both "uneconomical" and "vexatious" for a federal district court to proceed with a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). The *Brillhart* Court admonished lower courts scrupulously to avoid what it termed "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Id.*

[7]     These considerations have been echoed by other appellate courts. *See, e.g., Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (federal court

promulgated a non-exhaustive set of "guideposts" to be considered, including: (i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action is a form of "procedural fencing" being utilized "to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case not otherwise removable"; (v) whether a ruling in the federal action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory action.  *See id.* at 1331;[8] *see also Lexington Ins. Co. v. Rolison*, --- F. Supp.2d ----, 2006 WL 1594151, *7-*11 (S.D. Ala. May 17, 2006) (applying *Ameritas* guideposts in context of declaratory judgment action filed by insurer after entry of state court judgment against putative insured).

## III.  Application of *Ameritas* Guideposts.

Consistent with *Ameritas*, the Court will now consider and apply each of its nine guideposts in assessing the propriety of exercising jurisdiction over Progressive's declaratory judgment action under the specific circumstances presented here.[9]

The first *Ameritas* factor concerns "the strength of the state's interest in having the issues

---

"should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation"); *Mitcheson v. Harris*, 955 F.2d 235, 237-39 (4th Cir. 1992) (citing as reasons to dismiss declaratory actions the philosophy of judicial federalism, as well as pragmatic concerns of efficiency and comity).

[8]    In *Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005), the Eleventh Circuit reiterated that the decision to hear a declaratory judgment action is discretionary, that there can be no rigid or mechanical application of the Declaratory Judgment Act, and that a vast spectrum of considerations is available to district courts deciding whether to hear such an action. *See id.* at 1135, 1137-38.

[9]    Movant aids neither her cause nor the Court by omitting a factor-by-factor analysis of the *Ameritas* guideposts, and by failing to proffer any substantive rebuttal to the methodical analysis presented in Progressive's opposition brief.

raised in the federal declaratory action decided in the state courts."  411 F.3d at 1331.  Alabama state courts undoubtedly have a substantial interest in deciding the issues raised in this lawsuit.  The underlying *Bailey* Action is being litigated in an Alabama state court, and any ruling on Progressive's insurance coverage for Powell in this action may have profound implications for that state court litigation.  Moreover, this action concerns the proper interpretation of an insurance policy issued to an Alabama business (Marengo Forest) for its activities in Alabama, and whether that policy extended coverage to an Alabama citizen (Powell) for his alleged wrongs to another Alabama citizen (Bailey) during an incident that occurred in Alabama.  Alabama law will supply the rule of decision with respect to these questions.  Under these circumstances, the State of Alabama has a considerable interest in deciding these coverage issues.  *See Lexington*, 2006 WL 1594151, at *7 (determining that Alabama has substantial interest in deciding Alabama state law issues concerning interpretation of insurance contract issued to an Alabama business, with respect to an Alabama judgment).[10]

Next, we examine "whether the judgment in the federal declaratory action would settle the controversy."  *Ameritas*, 411 F.3d at 1331.  This question is unequivocally answered in the negative.  Progressive's declaratory judgment action encompasses only a fraction of the legal issues that have been joined in the *Bailey* Action, and would in no way address or resolve any of Bailey's claims against Powell, Marengo Forest, or anybody else.  After this Court adjudicated the coverage issues animating this declaratory judgment action, and irrespective of the manner in which those issues were decided, the Choctaw County Circuit Court would be left to implement that ruling and address the merits of Bailey's claims against Powell.  By contrast, both the coverage issues pertaining to Powell and the issues of Powell's liability to Bailey are pending before the state court in the same proceeding.  Allowing the Choctaw County Circuit Court to address all of those issues would avoid the fragmented, piecemeal litigation that Progressive

---

[10]    Progressive's argument to the contrary misguidedly suggests that Alabama has no interest in resolving this dispute apart from the entirely commonplace fact that Alabama law will provide the rule of decision.  (Opposition Brief, at 3.)  For the reasons stated above, the Court finds that Alabama has a much more compelling interest in deciding these issues than Progressive would acknowledge.

seeks to impose via its declaratory judgment action.  Clearly, this factor favors abstention.[11]

Third, the Court must consider "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue."  *Id.*  There can be no serious question

---

[11]      In so concluding, the Court gives due consideration to Progressive's point that the Potential Claimants have been joined as defendants in this action, but not in the *Bailey* Action. The centerpiece of Progressive's opposition is that any ruling by the *Bailey* court on coverage issues would not be *res judicata* as to those absent Potential Claimants and might force Progressive to relitigate the same coverage issues concerning Powell in subsequent lawsuits that those Potential Claimants might someday bring.  (Opposition Brief, at 4.)  This contention is unpersuasive for three reasons.  First, Progressive has made no showing that it could not join those Potential Claimants in the *Bailey* Action, but has instead simply argued that it would be "unnecessarily cumbersome" to do so.  (*Id.*)  Second, and more importantly, it is sheer speculation on Progressive's part that insurance coverage issues will <u>ever</u> arise with respect to the Potential Claimants.  In the 10 months since the Hot Shots incident, none of those Potential Claimants have sued Powell for property damage.  Nor is there any indication that suit is imminent.  Indeed, Progressive has been unsuccessful in serving process on three of the four Potential Claimants in the two and a half months that this action has been pending, and the fourth Potential Claimant, William Guy, has taken no action other than filing a *pro se* answer categorically denying all allegations of the Complaint.  By all appearances, there is no live case or controversy as between Progressive and the Potential Claimants that might warrant entry of a declaratory judgment at this time.  As to the Potential Claimants, any coverage determination by this Court would be an improper advisory ruling on an illusory, hypothetical dispute.  Third, Progressive glosses over the fact that any claims that the Potential Claimants might have against Powell are for property damage only, consisting of fender-bender type damage when their automobiles were struck by Powell's truck as it left Hot Shots.  It is exceedingly unlikely that any of the Potential Claimants' property damage claims could come anywhere near the $75,000 threshold required for federal subject matter jurisdiction to attach.  As such, the Court harbors grave doubt that federal jurisdiction exists over Progressive's declaratory judgment action to the extent that Progressive seeks a declaration of its rights vis a vis the Potential Claimants.  *See, e.g., First Transit, Inc. v. City of Racine*, 359 F. Supp.2d 782, 785 (E.D. Wis. 2005) ("Where a plaintiff sues two or more defendants in a diversity case, it must satisfy the amount in controversy requirement against each defendant unless the defendants are jointly liable."); *Wonders Trust v. Deaton, Inc.*, 200 F.R.D. 473, 478 (M.D. Fla. 2000) ("In an action against multiple unrelated defendants, a plaintiff relying on § 1332 must satisfy the amount-in-controversy requirement with respect to each individual defendant" unless defendants are jointly liable).  In sum, then, the Potential Claimants' presence in this case and absence from the *Bailey* Action is irrelevant to the *Ameritas* analysis because (a) Progressive has not shown that it cannot join the Potential Claimants in the *Bailey* Action, (b) no case or controversy now exists and it is entirely speculative that any case or controversy will ever exist between Progressive and Potential Claimants over the Hot Shots incident, and (c) federal jurisdiction over the portions of this declaratory judgment action that relate to the Potential Claimants is quite tenuous.

that determining whether Powell is an "insured" and whether the Hot Shots events were an "accident" for purposes of the Progressive policy would bring the parties' legal relations into sharper relief.  Of course, the pending declaratory claims in the *Bailey* Action place the state court in an equally advantageous position to clarify the parties' legal relations.  The question is not whether the Progressive-Powell legal relationship will or will not be clarified.  It undoubtedly will.  The question is whether this Court or the Choctaw County Circuit Court will be the one to do the clarifying.  As such, while this factor militates in favor of exercising jurisdiction, it does so only weakly.

The fourth factor identified by *Ameritas* is "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' – that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable."  *Id.*  Notwithstanding Progressive's protestations to the contrary, there is ample evidence that it has utilized this action as a tool in a race for *res judicata*.  A short time after Progressive initiated this declaratory judgment action in federal court, Powell filed a third-party complaint in state court seeking declaratory relief against Progressive.  Progressive has aggressively sought to stamp out the third-party complaint in state court by invoking Ala. Code § 6-5-440 for the proposition that Alabama law forbids a plaintiff from prosecuting two Alabama actions at the same time for the same cause and against the same party.  Thus, the record shows that after filing this federal action, Progressive has attempted to wield it to seal off Powell's access to a state forum for these coverage issues.  Such conduct falls fairly within this Court's definition of "procedural fencing" for *Ameritas* purposes.  Moreover, to endorse this kind of two-step dance would be to collapse the multi-faceted *Ameritas* test into a single-factor benchmark of who reaches the courthouse first.  By filing a federal declaratory action before the aggrieved plaintiff seeks declaratory relief in state court, an insurer could guarantee a federal forum by summoning § 6-5-440 to smite down the state declaratory claims, leaving only the federal action.  This approach does violence to the principles enunciated in *Ameritas*, as well as the rationale of the Supreme Court in *Brillhart* and *Wilton*.  For these reasons, the "procedural fencing" factor favors declination of federal

jurisdiction here.[12]

Fifth, *Ameritas* counsels district courts to consider "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction." 411 F.3d at 1331. It would. Identical claims for declaratory relief are now before the state court and this Court. If this Court asserted jurisdiction, that decision might effectively force the Choctaw County Circuit Court to dismiss Powell's third-party complaint under § 6-5-440 and hold the *Bailey* Action in suspended animation while awaiting a ruling from this Court as to whether Progressive must furnish a defense to Powell. Needless to say, wresting legal issues away from the state court, obliging it to stand idly by until this Court rules on those issues, and then expecting it to implement this Court's rulings (whether it agrees with them or not) is a recipe for undue encroachment and heightened friction. The result would be equally unfavorable if this Court asserted jurisdiction and the *Bailey* court permitted Powell's third-party complaint to proceed. In that event, a veritable footrace would ensue between federal and state courts to resolve the issues first, with the faster court's disposition becoming binding on the slower court's through the alchemy of *res judicata*.[13] Nothing good can come from such an

---

[12]    The Court also finds unpersuasive Progressive's suggestion that Powell has engaged in procedural fencing by not filing an answer in this action in a timely manner, even as he filed a third-party complaint in the *Bailey* Action. (Opposition Brief, at 5.) The inference is that Powell has somehow been dragging his feet to slow these federal proceedings, all to the advantage of the parallel state proceedings. However, this inference is unwarranted and inappropriate on the present record. On June 27, Powell's counsel filed a Motion for Extension of Time (doc. 16) in this action, explaining that an office miscommunication had led him to assume incorrectly that his Joinder in Motion to Dismiss had been filed in this action while he was out of town, when in fact it had not. There appears no reason to doubt the veracity of counsel's innocuous explanation for this oversight, and the Court finds no evidence of chicanery by Powell in that regard.

[13]    In that regard, this Court would be bound to honor any decisions reached by the Choctaw County Circuit Court concerning Progressive's defense and indemnity obligations to Powell. *See* 28 U.S.C. § 1738 (state judicial proceedings are entitled to "the same full faith and credit in every court within the United States"); *American Surety Co. v. Baldwin*, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932); *Harbuck v. Marsh Block & Co.*, 896 F.2d 1327, 1328-29 (11th Cir. 1990). In the well established spirit of judicial comity, this Court will not review, revisit or interfere with decisions rendered by Alabama state courts. This Court is not an appellate court for decisions rendered in Alabama state courts.

arrangement, so this guidepost also points unwaveringly in the direction of abstention.

The sixth *Ameritas* factor calls for consideration of "whether there is an alternative remedy that is better or more effective." 411 F.3d at 1331. In the posture of this case, litigating the coverage issue in the *Bailey* Action exclusively is a vastly superior remedy to conducting double-tracked litigation in two courts. Unquestionably, Progressive can fully litigate its claims for declaratory judgment against Powell and Bailey in the existing Choctaw County Circuit Court proceedings, with both coverage and liability issues to be decided by the same court in an integrated manner without federal interference. This alternative is clearly better and more effective.[14]

Combining the seventh and eighth *Ameritas* factors, the Court examines "whether the underlying factual issues are important to an informed resolution of the case" and, if so, "whether the state trial court is in a better position to evaluate those factual issues than is the federal court." *Id.* Both of these questions are answered in the affirmative. The heart of this declaratory judgment action is Progressive's claim that Powell did not have permission from Marengo Forest to use the truck on the evening of September 18, 2005 and that the Hot Shots events were not an "accident" under the applicable policy. Neither argument can be evaluated without an in-depth study of the facts and determinations of what actually transpired on September 18, 2005. The Choctaw County Circuit Court will already be examining those events in connection with Bailey's claims against Powell and Marengo Forest, so that court would not need to review them anew to resolve Progressive's insurance coverage issues. Rather than having two courts duplicate effort in scrutinizing and assessing the underlying facts, a far more sensible and efficient approach is for the state court that is already tasked with examining those facts in the underlying case to apply those same facts to the pending claims for declaratory relief.

Ninth and finally, *Ameritas* directs district courts to consider "whether there is a close

---

[14]     In arguing otherwise, Progressive reiterates its concerns over the Potential Claimants and its possible inability to join them in the *Bailey* Action. (Opposition Brief, at 6 n.4.) This consideration has already been exhaustively considered and rejected in note 11, *supra*, and will not be revisited here. Suffice it to say that the nominal presence of the Potential Claimants in this litigation and their absence from the *Bailey* Action in no way renders the state court alternative inferior to or less effective than this declaratory judgment action.

nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Id.* This factor unambiguously weighs in favor of abstention. Progressive's Complaint raises exclusively state law issues and implicates exclusively state law public policies, with no reference whatsoever to federal common or statutory law.

Considered collectively, the *Ameritas* guideposts weigh heavily in favor of abstention. This declaratory judgment action turns on Alabama state law issues relating to whether Progressive's insurance policy provides coverage to Powell in connection with certain state-law claims brought in an Alabama state court concerning events that occurred in Alabama between Alabama residents. All of the legal and factual issues raised by Progressive in this action against Bailey and Powell are also at issue in the currently pending Choctaw County action. These points support abstention. *See Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 390-91 (5th Cir. 2003) ("if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit"); *ITT Industries, Inc. v. Pacific Employers Ins. Co.*, 427 F. Supp.2d 552, 561 (E.D. Pa. 2006) (describing wasteful, inefficient outcome if both federal court and state court ruled on parallel actions, with duplication, piecemeal resolution of issues, and encroachment on other proceedings). As one appellate court sagely put it, "[i]t hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed on parallel tracks." *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992). What's more, this action cannot completely and finally resolve this dispute, but will leave various issues for resolution in the Choctaw County action irrespective of the outcome of the declaratory issues in federal court. That kind of piecemeal litigation, and the ensuing friction, gratuitous interference, and unease between state and federal courts confronted with precisely the same issues presented by the same litigants, counsels against exercising jurisdiction here. *See Ameritas*, 411 F.3d at 1332 (finding that allowing declaratory judgment action to proceed would amount to gratuitous interference with more encompassing, currently pending state court action); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) ("at least where another suit involving the same parties and presenting opportunities for ventilation of the

same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed") (citations omitted).

In short, taking to heart *Wilton*'s concerns of "practicality and wise judicial administration," the Court finds that those virtues would be poorly served by retaining jurisdiction here, inasmuch as the same exclusively state law issues presented in this case are presently being litigated by the same parties in a parallel state court proceeding, this action includes only a subset of the matters being litigated in the state court, and this action has been invoked by Progressive in a strategy to freeze coverage issues out of the state court proceeding. Furthermore, it appears that all parties to this action will have full and adequate recourse to litigate all legal issues presented herein in the *Bailey* Action. *See Wilton*, 515 U.S. at 283 (suggesting that abstention determination ought to consider whether claims of all parties in interest can satisfactorily be adjudicated in state court proceeding). For all of these reasons, the Court will decline to exercise jurisdiction.

## IV.    Remedy.

Having determined that *Wilton* discretion is in play, and having applied the *Ameritas* guideposts to conclude that abstention will promote the interests of practicality, comity and efficient, wise administration of justice, the Court now must decide whether to dismiss or stay this action.

In *Wilton*, the Supreme Court observed that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." 515 U.S. at 288 n.2; *see also Gatewood Lumber, Inc. v. Travelers Indem. Co.*, 898 F. Supp. 364, 369 (S.D. W.Va. 1995) (staying declaratory judgment action, rather than dismissing it under *Wilton*, "to alleviate the risk of a possible time bar to otherwise viable causes if the State action fails to resolve all matters in controversy"). However, numerous courts engaging in abstention pursuant to *Brillhart* and *Wilton* have instead elected to dismiss the declaratory action without prejudice. *See, e.g., Ameritas*, 411 F.3d at 1332 (finding no abuse of discretion in district court's decision to dismiss declaratory judgment action in favor of parallel state court action); *Summy*, 234 F.3d at 136 (vacating district court's decision to exercise jurisdiction over declaratory judgment action and remanding with instructions that the

complaint be dismissed pursuant to *Wilton*); *Poston*, 88 F.3d at 258 (affirming dismissal of declaratory judgment action without prejudice where parallel state court action contained defendant and issues not present in federal action); *St. Paul Fire & Marine Ins. Co. v. Johnson Homes of Meridian, Inc.*, 2005 WL 2739141, *10 (S.D. Ala. Oct. 24, 2005) (abstaining from hearing declaratory judgment action in favor of parallel state court proceeding and dismissing declaratory judgment action).[15]

Dismissal is warranted here for two reasons.  First, in contrast to the concerns articulated in *Wilton* and *Gatewood*, no party has suggested that there would be any reasonable risk of a time bar in the *Bailey* Action with respect to Progressive's claims asserted here, so as to render a stay appropriate.  Second, if this action were stayed, perverse incentives might be created for Progressive to waylay Powell's third-party complaint for declaratory relief in the *Bailey* Action in hopes that it might be able to litigate those coverage issues in federal court after the stay is lifted.  Thus, granting a stay could conceivably yield the type of forum-shopping and piecemeal litigation that *Wilton/Brillhart* abstention was designed to prevent.  Based on these considerations, and in the absence of countervailing argument by the parties, this action will be dismissed, rather than stayed.

## V.      Conclusion.

For all of the foregoing reasons, defendant Doris Bailey's Motion to Dismiss (doc. 6) is **granted**.  This action is hereby **dismissed without prejudice** pursuant to *Wilton/Brillhart* abstention, to enable the parties to litigate all issues pertaining to this dispute in the parallel lawsuit currently pending in Choctaw County Circuit Court.  A separate judgment will enter.

DONE and ORDERED this 25th day of July, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[15]      *See generally Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (recognizing that federal courts have power to dismiss cases based on abstention principles where the relief being sought is equitable or discretionary).

-13-